UNITED STATES OF AMERICA
UNITED STATES DISTRICT COURT
FOR THE WESTERN DISTRICT OF MICHIGAN
SOUTHERN DIVISION

---

KENNETH SMITH,

        Plaintiff,                Case No. 1:11-cv-875

v.                                           Honorable Robert Holmes Bell

DANIEL H. HEYNS et al.,

        Defendants.
_____/

## **OPINION**

This is a civil rights action brought by a state prisoner pursuant to 42 U.S.C. § 1983. The Court has granted Plaintiff leave to proceed *in forma pauperis*, and Plaintiff has paid the initial partial filing fee. Under the Prison Litigation Reform Act, PUB. L. NO. 104-134, 110 STAT. 1321 (1996), the Court is required to dismiss any prisoner action brought under federal law if the complaint is frivolous, malicious, fails to state a claim upon which relief can be granted, or seeks monetary relief from a defendant immune from such relief. 28 U.S.C. §§ 1915(e)(2), 1915A; 42 U.S.C. § 1997e(c). The Court must read Plaintiff's *pro se* complaint indulgently, *see Haines v. Kerner*, 404 U.S. 519, 520 (1972), and accept Plaintiff's allegations as true, unless they are clearly irrational or wholly incredible. *Denton v. Hernandez*, 504 U.S. 25, 33 (1992). Applying these standards, Plaintiff's action will be dismissed for failure to state a claim.

**Factual Allegations**

Plaintiff Kenneth Smith presently is incarcerated with the Michigan Department of Corrections (MDOC) and housed at the Lakeland Correctional Facility (LCF). He sues MDOC Director Daniel Heyns, LCF Administrative Officer Patricia Schmidt, and LCF Mailroom Supervisor Cheryl Reincke.

According to Plaintiff's allegations, on October 1, 2010, Plaintiff filed a complaint for habeas corpus in the Michigan Court of Appeals, challenging his 1997 convictions on the basis of a "radical defect." On November 15, 2010, while his state-court habeas complaint was still pending, Plaintiff was hospitalized with the life-threatening illness of necrotizing fasciitis. He remained hospitalized in the University of Michigan Health System until November 29, 2010. A few hours after his return to LCF, Plaintiff was rushed back to the University of Michigan Hospital, where he remained until December 7, 2010. He was then transferred to the Duane Waters Hospital for four weeks of medical treatments. On December 29, 2010, he was discharged and sent back to LCF.

On January 2, 2011, Plaintiff received all of his mail that had arrived while he was in the hospital. The mail did not include any legal mail regarding his state-court habeas complaint. On April 22, 2011, Plaintiff called his wife and asked her to check the internet to determine the status of his case. She eventually found that the court of appeals had issued an order on December 17, 2010, denying the complaint. Plaintiff wrote the Clerk of the Michigan Court of Appeals on April 24, 2011, inquiring about the status of his case. On May 10, 2011, the clerk sent Plaintiff a copy of the December 17, 2010 order.

On April 24, 2011, Plaintiff wrote a kite to the mailroom personnel, asking if he had received legal mail on December 20 or 21, 2011, while he was at Duane Waters Hospital. On May 3, 2011, Defendant Reincke responded, "If you were off count, your mail would have been returned to sender. Mail room did not hold any mail for you." (Ex. A to Compl., docket #1-1, Page ID#9.)

Plaintiff filed a grievance against Defendant Reincke on May 10, 2011, complaining that her handling of his legal mail prevented him from filing a timely application for leave to appeal to the Michigan Supreme Court within 56 days of the court of appeals' order, thereby depriving him of his right of access to the courts. In his grievance, Plaintiff sought reimbursement of the $350.00 filing fee paid to the court of appeals. On May 27, 2011, Defendant Schmidt responded to his grievance, concluding that the policy followed by the mailroom was incorrect and that, in future, the mailroom should forward mail to hospitalized prisoners. Schmidt therefore concluded that Plaintiff's mail had been returned to the court in error. Schmidt advised Plaintiff that, in order to receive a refund of his filing fee, he needed to continue the grievance process and then request State Administrative Board approval for the refund. (Ex. D to Compl., Page ID#13.) Plaintiff appealed his grievance to Step II, which upheld the Step I finding. At Step III, the grievance specialist forwarded the grievance and supporting documentation to the State Administrative Board for possible reimbursement.

In the instant civil rights complaint, Plaintiff complains that he was denied access to the courts. He seeks compensatory and punitive damages.

**Discussion**

I. Failure to state a claim

A complaint may be dismissed for failure to state a claim if "'it fails to give the defendant fair notice of what the . . . claim is and the grounds upon which it rests.'" *Bell Atl. Corp. v. Twombly*, 550 U.S. 544, 555 (2007) (quoting *Conley v. Gibson*, 355 U.S. 41, 45-46 (1957)). While a complaint need not contain detailed factual allegations, a plaintiff's allegations must include more than labels and conclusions. *Twombly*, 550 U.S. at 555; *Ashcroft v. Iqbal*, 129 S. Ct. 1937, 1949 (2009) ("Threadbare recitals of the elements of a cause of action, supported by mere conclusory statements, do not suffice."). The court must determine whether the complaint contains "enough facts to state a claim to relief that is plausible on its face." *Twombly*, 550 U.S. at 570. "A claim has facial plausibility when the plaintiff pleads factual content that allows the court to draw the reasonable inference that the defendant is liable for the misconduct alleged." *Iqbal*, 129 S. Ct. at 1949. Although the plausibility standard is not equivalent to a "'probability requirement,' . . . it asks for more than a sheer possibility that a defendant has acted unlawfully." *Iqbal*, 129 S. Ct. at 1949 (quoting *Twombly*, 550 U.S. at 556). "[W]here the well-pleaded facts do not permit the court to infer more than the mere possibility of misconduct, the complaint has alleged – but it has not 'show[n]' – that the pleader is entitled to relief." *Iqbal*, 129 S. Ct. at 1950 (quoting FED. R. CIV. P. 8(a)(2)); *see also Hill v. Lappin*, 630 F.3d 468, 470-71 (6th Cir. 2010) (holding that the *Twombly/Iqbal* plausibility standard applies to dismissals of prisoner cases on initial review under 28 U.S.C. §§ 1915A(b)(1) and 1915(e)(2)(B)(i)).

To state a claim under 42 U.S.C. § 1983, a plaintiff must allege the violation of a right secured by the federal Constitution or laws and must show that the deprivation was committed by

a person acting under color of state law. *West v. Atkins*, 487 U.S. 42, 48 (1988); *Dominguez v. Corr. Med. Servs.*, 555 F.3d 543, 549 (6th Cir. 2009). Because § 1983 is a method for vindicating federal rights, not a source of substantive rights itself, the first step in an action under § 1983 is to identify the specific constitutional right allegedly infringed. *Albright v. Oliver*, 510 U.S. 266, 271 (1994).

It is clearly established that prisoners have a constitutionally protected right of access to the courts under the First and Fourteenth Amendments. *See Lewis v. Casey*, 518 U.S. 343, 354 (1996); *Bounds v. Smith*, 430 U.S. 817, 821 (1977); *Wolff v. McDonnell*, 418 U.S. 539, 556 (1974). Prison officials have a two-fold duty to protect a prisoner's right of access to the courts. *McFarland v. Luttrell*, No. 94-6231, 1995 WL 150511, at *3 (6th Cir. Apr. 5, 1995). First, they must provide affirmative assistance in the preparation of legal papers in cases involving constitutional rights, in particular criminal and habeas corpus cases, as well as other civil rights actions relating to the prisoner's incarceration. *Id.* (citing *Bounds*, 430 U.S. at 824-28). Second, the right of access to the courts prohibits prison officials from erecting any barriers that may impede the inmate's accessibility to the courts. *Id.* (citing *Knop v. Johnson*, 977 F.2d 996, 1009 (6th Cir. 1992)); *see also Bounds*, 430 U.S. at 822 (citing *Ex parte Hull*, 312 U.S. 546, 549 (1941)).

In order to state a viable claim for interference with his access to the courts, a plaintiff must show actual injury to pending or contemplated litigation. *See Lewis*, 518 U.S. at 349; *Dellis v. Corr. Corp. of Am.*, 257 F.3d 508, 511 (6th Cir. 2001); *Talley-Bey v. Knebl*, 168 F.3d 884, 886 (6th Cir. 1999); *Knop*, 977 F.2d at 1000. The Supreme Court has strictly limited the types of cases for which there may be an actual injury:

> *Bounds* does not guarantee inmates the wherewithal to transform themselves into litigating engines capable of filing everything from shareholder derivative actions to slip-and-fall claims. The tools it requires to be provided are those that the inmates

> need in order to attack their sentences, directly or collaterally, and in order to challenge the conditions of their confinement. Impairment of any other litigating capacity is simply one of the incidental (and perfectly constitutional) consequences of conviction and incarceration.

*Lewis*, 518 U.S. at 355. "Thus, a prisoner's right to access the courts extends to direct appeals, habeas corpus applications, and civil rights claims only." *Thaddeus-X v. Blatter*, 175 F.3d 378, 391 (6th Cir. 1999) (en banc). Moreover, the underlying action must have asserted a non-frivolous claim. *Lewis*, 518 U.S. at 353; *accord Hadix v. Johnson*, 182 F.3d 400, 405 (6th Cir. 1999) (*Lewis* changed actual injury to include requirement that action be non-frivolous). Further, the Supreme Court squarely has held that "the underlying cause of action . . . is an element that must be described in the complaint, just as much as allegations must describe the official acts frustrating the litigation." *Christopher v. Harbury*, 536 U.S. 403, 415 (2002) (citing *Lewis*, 518 U.S. 353 & n.3). The *Christopher* Court held that, "[l]ike any other element of an access claim, the underlying cause of action and its lost remedy must be addressed by allegations in the complaint sufficient to give fair notice to a defendant." *Christopher*, 536 U.S. at 416.

   Plaintiff alleges that he was deprived of his right of access to the courts when his legal mail was returned to sender during his hospitalization. He claims that the mailroom policy of returning mail prevented him from appealing to the Michigan Supreme Court the denial of his complaint for habeas corpus.

   Plaintiff fails to state a claim for two reasons. First, Plaintiff fails entirely to allege that his underlying action was non-frivolous. *See Lewis*, 518 U.S. at 353. In Michigan, the writ of habeas corpus is available only in narrow circumstances when radical defects render a judgment or proceeding absolutely void. *See Triplett v. Deputy Warden*, 371 N.W.2d 862, 866 (Mich. Ct. App.

1985) (citing *In re Stone*, 294 N.W. 156 (Mich. 1940)). A judgment which is merely erroneous, rather than void, is subject to direct review and may not be collaterally attacked in a habeas corpus proceeding. *Id.* (citing, *inter alia*, *In re Roberts*, 17 N.W.2d 218 (Mich. 1945)). While Plaintiff makes a conclusory allegation that "he have [sic] a radical defect claim" (Compl., Page ID#4), he makes no allegations describing the nature of his claim, and he asserts no fact or argument that would suggest that his 1997 convictions were void. Conclusory allegations are wholly insufficient to demonstrate the existence and loss of a non-frivolous cause of action. *See Iqbal*, 129 S. Ct. at 1949-50; *Twombly*, 550 U.S. at 555; *see also Christopher*, 536 U.S. at 416 (holding that the underlying cause of action and its lost remedy must be addressed by allegations in the complaint).

Second, orders of denial in state habeas corpus proceedings are not appealable as of right. *See Triplett*, 371 N.W.2d at 866. "It has long been established that a writ of error does not lie to review habeas corpus proceedings." *Id.* (citing *In re Brock*, 107 N.W. 446 (1906)). Instead, orders denying a writ of habeas corpus may only be brought before an appellate court by the filing of an original complaint. *Id.*; *see also* MICH. CT. R. 7.203(C)(3) (granting jurisdiction to hear original habeas corpus actions filed in the court of appeals); MICH. CT. R. 7.301(A)(7) (granting jurisdiction to the supreme court to "exercise other jurisdiction as provided by the constitution or by law"). Because Plaintiff had no right to appeal the denial of his complaint for habeas corpus, his delay in receiving the court of appeals' December 17, 2010 order did not cause actual injury to a non-frivolous appeal. Moreover, there is no time limitation for when a complaint for habeas corpus may be filed, so long as the prisoner is in custody when the court enters judgment. *See id.* at 865. As a consequence, Plaintiff retains the ability to file a complaint for habeas corpus in the Michigan

Supreme Court.  *See* MICH. COMP. LAWS § 600.4304 (conferring authority to issue the writ on the supreme court, court of appeals, circuit courts, municipal courts and district courts).

For both reasons, Plaintiff fails to state an access-to-the-courts claim based on the handling of his legal mail.

### Conclusion

Having conducted the review now required by the Prison Litigation Reform Act, the Court determines that Plaintiff's action will be dismissed for failure to state a claim pursuant to 28 U.S.C. §§ 1915(e)(2) and 1915A(b), and 42 U.S.C. § 1997e(c).

The Court must next decide whether an appeal of this action would be in good faith within the meaning of 28 U.S.C. § 1915(a)(3).  *See McGore v. Wrigglesworth*, 114 F.3d 601, 611 (6th Cir. 1997).  For the same reasons that the Court dismisses the action, the Court discerns no good-faith basis for an appeal.  Should Plaintiff appeal this decision, the Court will assess the $455.00 appellate filing fee pursuant to § 1915(b)(1), *see McGore*, 114 F.3d at 610-11, unless Plaintiff is barred from proceeding *in forma pauperis*, e.g., by the "three-strikes" rule of § 1915(g). If he is barred, he will be required to pay the $455.00 appellate filing fee in one lump sum.

This is a dismissal as described by 28 U.S.C. § 1915(g).

A Judgment consistent with this Opinion will be entered.


Dated: <u>October 12, 2011</u>                                 <u>/s/ Robert Holmes Bell</u>
                                                               ROBERT HOLMES BELL
                                                               UNITED STATES DISTRICT JUDGE